UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Pierre Yves Beneche

v.                                                    Civil No. 26-cv-203-LM-TSM
                                                      Opinion No. 2026 DNH 038 P
FCI Berlin Warden et al.[1]


**O R D E R**

Pierre Yves Beneche petitions for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that his present civil immigration detention violates his rights to due process under the Fifth Amendment. Specifically, Beneche alleges that his thirteen-month detention without a bond hearing has become unreasonably prolonged. Respondents object. Doc. no. 9.[2] For the following reasons, Beneche's petition (doc. no. 1) is granted.


**STANDARD OF REVIEW**

This court may grant a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The petition "may be resolved on the merits without [an evidentiary]

---

[1] The petition names only FCI Berlin's Warden, but pursuant to this court's March 19 order (doc. no. 14), the court served Beneche's petition on the Director of Immigration and Customs Enforcement's Boston field office and added the Director as a respondent in this case. Accordingly, the court will refer to the Warden and the Director collectively as "Respondents."

[2] In ruling on the petition, the court also considered the government's briefing in doc. nos. 16 and 17.

hearing when, as here, the material facts are not in dispute." Cummings v. Fed.
Corr. Inst., Berlin, Civ. No. 22-cv-468-SM-AJ, 2024 WL 1256068, at *1 (D.N.H. Mar.
25, 2024). The petitioner has the burden of proving that his confinement is
unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).

## BACKGROUND[3]

Beneche is a twenty-nine-year-old Haitian national. On June 29, 2019,
Beneche first entered the United States and was apprehended by officials from the
Department of Homeland Security ("DHS"). Beneche subsequently applied for
asylum and for withholding of removal. An asylum officer concluded that Beneche
lacked a credible fear of persecution but determined that he had a credible fear of
facing torture if returned to his home country. Accordingly, Beneche was given a
Notice to Appear before an Immigration Judge (IJ) for further proceedings under 8
U.S.C. § 1229a. However, after a hearing on June 24, 2020, an IJ denied Beneche's
application for asylum and for withholding of removal, and ordered him removed.
Beneche was subsequently removed to Haiti on September 9, 2020.

On or about February 12, 2023, Beneche reentered the country near San
Ysidro, California where he once again was apprehended by DHS. For reasons that
are not clear, DHS did not reinstate Benche's prior removal order, but put him back
in removal proceedings under § 1229a and issued him a Notice to Appear before an

---

[3] The following facts are drawn from the parties' filings and the attachments
thereto. They are not in dispute.

2

IJ on January 22, 2025 for the commencement of such proceedings.[4] Rather than continue to detain Beneche, DHS enrolled him in an "Alternatives to Detention Program." Under this program, Beneche had to complete weekly virtual check-ins, a condition that was later changed to in-person reporting.

In January 2024, Beneche again applied for asylum and withholding of removal.[5] Beneche states that when he later appeared for the hearing scheduled for January 22, 2025, the immigration court did not have any record of the 2023 Notice to Appear and informed Beneche that he would be notified of a new hearing date once his case was docketed. However, on March 10, 2025, at a routine check-in with Immigration and Customs Enforcement ("ICE"), ICE cancelled Beneche's Notice to Appear, reinstated Beneche's prior final order of removal from 2020, and detained him. Beneche was given a reasonable fear interview at which an asylum officer determined that Beneche had not established either that he would be persecuted on the basis of a protected ground or that he would be tortured if returned to Haiti. However, on April 16, 2025, after hearing testimony from Beneche, an IJ vacated the finding of the asylum officer and placed Beneche in "withholding-only" proceedings.[6]

---

[4] DHS charged that Beneche was inadmissible because he was an arriving alien who lacked valid documentation to enter the country. See 8 U.S.C. § 1182(a)(7)(A)(i)(I).

[5] The record indicates that DHS received his application and it was pending as of January 31, 2024.

[6] "Withholding-only" proceedings are a form of "country-specific" relief, are "limited to a determination of whether the alien is eligible for withholding or deferral

On May 12, 2025, Beneche, through counsel, sent ICE a letter requesting that he be released from custody on his own recognizance for the duration of his removal proceedings. The letter described Beneche's strong ties to the community and his lack of criminal history. On June 8, 2025, ICE sent Beneche a letter informing him that his custody status had been reviewed and that he would not be released because ICE was "in receipt of or expects to receive" Beneche's travel documents and had determined that removal was both practicable and likely to occur in the reasonably foreseeable future. Doc. no. 17-8 at 1. The letter stated that ICE determined that the criteria for release in 8 C.F.R. § 241.4(e) [7] had not been satisfied, based on the following: (1) Beneche is a Haitian national with a final order of removal; (2) he has a conviction for Illegal Entry; (3) ICE planned to submit a travel document request to the Consulate of Haiti on his behalf; and (4) Beneche's removal would be scheduled pending receipt of that document.

The letter indicated that Beneche could elect to have a personal interview to review his custody status, which Beneche did. On August 20, 2025, two deportation

---

of removal, and as such, all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief." Johnson v. Guzman Chavez, 594 U.S. 523, 531, 536 (2021) (quotation omitted).

[7] Under 8 C.F.R. § 241.4(e), before recommending release, ICE must conclude that: "(1) Travel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest; (2) The detainee is presently a non-violent person; (3) The detainee is likely to remain nonviolent if released; (4) The detainee is not likely to pose a threat to the community following release; (5) The detainee is not likely to violate the conditions of release; and (6) The detainee does not pose a significant flight risk if released."

officers interviewed Beneche. See 8 C.F.R. § 241.4(i). Beneche informed the officers that he had an aunt and uncle living in the United States and that he would live with his stepsister in Cambridge, Massachusetts if released. However, the officers determined that Beneche posed a flight risk "based on his past immigration history" and recommended that he remain detained pending his removal from the United States. Doc. no. 17-9 at 2.

Meanwhile, Beneche filed a motion for a custody redetermination before an IJ at some point in the spring of 2025. The government argued in opposition that Beneche was not eligible for bond because he was subject to a final order of removal, had been served with a decision to reinstate the prior order, and was therefore being held pursuant to 8 U.S.C. § 1231. On June 18, 2025, an IJ issued an order denying Beneche's request for a custody redetermination, finding that he was "statutorily ineligible." Doc. no. 1-1 at 1.

On September 22, 2025, an IJ denied Beneche's applications for withholding of removal under the INA and the Convention Against Torture ("CAT"), and his application for deferral of removal under CAT. On October 16, 2025, Beneche appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), where his case remains pending.

On March 12, 2026, Beneche filed this petition for a writ of habeas corpus.

**DISCUSSION**

Beneche argues that his detention has become unreasonably prolonged in violation of his rights to due process under the Fifth Amendment. Before turning to

the merits of Beneche's claim, the court will provide a brief overview of the relevant statutory structure.

I.     Statutory Overview

"Congress has created an 'expedited [removal] process' for noncitizens who reenter the United States unlawfully after having previously been removed." G.P. v. Garland, 103 F.4th 898, 900 (1st Cir. 2024) (alteration in original) (quoting Johnson v. Guzman Chavez, 594 U.S. 523, 529-30 (2021)). Under 8 U.S.C. § 1231(a)(5), "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." DHS must then remove the noncitizen within a ninety-day "removal period." G.P., 103 F.4th at 900. While detention is mandatory during the removal period, it "may be extended into a 'post-removal period'" if, among other circumstances, a noncitizen is deemed inadmissible under 8 U.S.C. § 1182. Id. (brackets omitted) (quoting Guzman Chavez, 594 U.S. at 528-29)); see 8 U.S.C. § 1231(a)(6).

Notwithstanding this expedited process, "a noncitizen who is subject to a reinstated removal order may seek to prevent removal to a specific country by obtaining statutory withholding of removal or relief under CAT." G.P., 103 F.4th at 900. The Supreme Court recently clarified that "§ 1231 governs the detention of a noncitizen with a reinstated removal order while the noncitizen pursues these forms of relief." Id. (citing Guzman Chavez, 594 U.S. at 526).

"Section 1231 'does not specify a time limit' on how long DHS may detain a noncitizen." Id. (quoting Guzman Chavez, 594 U.S. at 529). Nor does the statute

6

require DHS to provide a noncitizen with a bond hearing before an IJ where DHS bears the burden of justifying the noncitizen's continued detention beyond the removal period. Johnson v. Arteaga-Martinez, 596 U.S. 573, 580-81 (2022). However, DHS regulations do require ICE to conduct periodic "custody reviews" to determine whether to continue to detain a noncitizen beyond the removal period. See generally 8 C.F.R. § 241.4. These reviews are not subject to appeal to an IJ and place the burden on noncitizens to show that they are not a danger or a flight risk. See id.

II.   Beneche's As-Applied Due Process Claim

Beneche argues that his detention of over thirteen months without a bond hearing violates the INA and the Due Process Clause. The government counters that Beneche's detention is authorized by 8 U.S.C. § 1231(a)(6) and does not offend the Constitution. Assuming without deciding that Beneche's prolonged detention without a bond hearing is authorized by § 1231(a)(6), the court finds that his prolonged detention violates his rights to due process.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Due Process Clause applies to all persons in the United States regardless of citizenship status. Id. at 693. And, as relevant here, it provides "important constitutional limitations" on the

"government's exercise of its power to detain immigrants pending removal." Hernandez-Lara v. Lyons, 10 F.4th 19, 28 (1st Cir. 2021) (quoting id. at 695).

Courts, including the First Circuit, have recognized that "the Due Process Clause imposes some form of reasonableness limitation upon the duration of detention" under the INA. Reid v. Donelan, 17 F.4th 1, 7 (1st Cir. 2021) (quotation omitted). As Judge Laplante recently explained, prolonged detention without a bond hearing pending removal "will at some point violate the right to due process." Fils-Aime v. FCI Berlin, Warden, 808 F. Supp. 3d 218, 224 (D.N.H. 2025); see id. (holding that prolonged detention without a bond hearing under 8 U.S.C. §§ 1225(b) and 1231(a) violated noncitizen's rights to due process and collecting cases holding similarly).

In Johnson v. Arteaga-Martinez, the Supreme Court concluded that "the plain language of § 1231(a)(6) does not support a claim that the statute 'requires bond hearings before immigration judges after six months of detention,' [but] expressly did not reach the petitioner's constitutional claim that due process requires individualized bond hearings when detention under § 1231(a)(6) becomes prolonged." Arostegui-Maldonado v. Baltazar, 794 F. Supp. 3d 926, 938 (D. Colo. 2025), appeal dismissed, No. 25-1377, 2025 WL 4673516 (10th Cir. Oct. 10, 2025)) (quoting Arteaga-Martinez, 596 U.S. at 580-81); see Arteaga-Martinez, 596 U.S. at 583 (leaving petitioner's constitutional arguments "for the lower courts to consider in the first instance"). Indeed, after Arteaga-Martinez, many courts have allowed petitioners detained under § 1231(a)(6) to mount as-applied challenges to their assertedly prolonged detentions under the Due Process Clause. See, e.g., Cruz v.

Bondi, No. 25-cv-262-JJM-PAS, 2025 WL 3295485, at *7-10 (D.R.I. Nov. 26, 2025); Caceres v. Joyce, 813 F. Supp. 3d 407, 415-18 (S.D.N.Y. 2025); Trejo v. Warden of ERO El Paso E. Montana, 807 F. Supp. 3d 697, 707-12 (W.D. Tex. 2025); Hilario M.R. v. Warden, Mesa Verde Det. Ctr., No. 1:24-CV-00998-EPG-HC, 2025 WL 1158841, at *6-10 (E.D. Cal. Apr. 21, 2025); Chavez-Gonsalez v. Ball, No. 6:23-CV-06238 EAW, 2024 WL 1268282, at *3-4 (W.D.N.Y. Mar. 26, 2024); Cabrera Galdamez v. Mayorkas, No. 22 CIV. 9847 (LGS), 2023 WL 1777310, at *4-8 (S.D.N.Y. Feb. 6, 2023).

G.P. v. Garland is not to the contrary. 103 F.4th at 902. There, the First Circuit concluded that a noncitizen in withholding-only proceedings could not rely on Zadvydas's statutory interpretation of § 1231(a)(6) as containing an implicit limit on the length of a noncitizen's detention. Id. The First Circuit reasoned that, unlike the petitioners in Zadvydas, who faced the prospect of indefinite and never-ending detention because there was no country to which they could be removed, noncitizens in withholding-only proceedings do not face the potential of indefinite detention because their withholding-only proceedings will eventually conclude. Id. at 901-02. G.P. expressly declined to address the possibility that a petitioner in withholding-only proceedings may be entitled to a bond hearing under the Due Process Clause as a remedy to an unreasonably prolonged detention. See id. at 902 n.3 ("G.P. challenges his detention under only Zadvydas [so] we need not consider any constitutional claim."). Importantly, the petitioner in G.P. did not seek a bond hearing, but outright release. Id. at 899.

9

Where, as here, a petitioner challenges his or her prolonged detention without a bond hearing under the Due Process Clause, the court will apply the same four-factor, non-exhaustive reasonableness test that this court has applied to similar challenges.[8] See, e.g., Fils-Aime, 808 F. Supp. 3d at 224 (applying four-factor test to prolonged detention under 8 U.S.C. §§ 1225(b) and 1231(a)); K-S v. Warden, FCI-Berlin, Civ. No. 25-cv-288-SE, 2025 WL 3671774, at *4 (D.N.H. Dec. 17, 2025), appeal filed, No. 26-1157 (1st Cir. Feb. 19, 2026) (applying same test to prolonged detention under § 1225(b)). This test "considers [1] length of detention, [2] likely duration of future detention, [3] the reasons for the delay, and [4] whether the conditions of confinement are 'meaningfully different from criminal punishment,' to assess whether the petitioner's detention has become unreasonable under the Due Process Clause." Fils-Aime, 808 F. Supp. 3d at 224 (quoting A.L. v. Oddo, 761 F. Supp. 3d 822, 826 (W.D. Pa. 2025)); see also Arostegui-Maldonado, 794 F. Supp. 3d at 938-42 (applying a similar six-factor test to due process challenge to prolonged detention under § 1231(a)).

"The remedy for a prolonged detention is a bond hearing before an immigration judge at which the government bears the burden of proving that the [noncitizen] should not be released on bond." Fils-Aime, 808 F. Supp. 3d at 226

---

[8] The government asserts that the standard set forth in Zadvydas controls and that Beneche cannot succeed on his claim because he has not shown that he is subject to potentially indefinite detention as his removal proceedings are ongoing. However, this court has recognized that "[n]oncitizens who have been detained during lengthy withholding-only proceedings retain the right to challenge their detention on constitutional grounds even though their proceedings are ongoing." G.P. v. Garland, Civ. No. 1:23-cv-322-PB, 2024 WL 328435, at *5 (D.N.H. Jan. 29, 2024), aff'd, 103 F.4th 898 (1st Cir. 2024).

(brackets omitted) (quoting Smorodska v. Strafford Cnty. Dep't of Corr., Civ. No. 1:20-cv-446-JL, doc. no. 31 at *5 (D.N.H. May 14, 2020)). Under First Circuit precedent, "due process requires the government to either (1) prove by clear and convincing evidence that [Beneche] poses a danger to the community or (2) prove by a preponderance of the evidence that [he] poses a flight risk." K-S, 2025 WL 3671774, at *5 (quoting Hernandez-Lara, 10 F.4th at 41).

The court applies the four-factor test below.

### A.   Length of Detention

Beneche has been detained for over thirteen months which is far beyond the ninety-day removal period under which detention is statutorily mandated, § 1231(a)(2), and is over twice as long as the presumptively reasonable six-month period of detention articulated in Zadvydas, 533 U.S. at 701. While there is no bright-line rule that courts apply to determine whether detention has become unreasonably prolonged, "detention is likely to be unreasonable if it lasts for more than one year during removal proceedings before the agency, excluding any delays due to the [noncitizen's] dilatory tactics." Fils-Aime, 808 F. Supp. 3d at 225 (quoting Smorodska, Civ. No. 1:20-cv-446-JL, doc. no. 31 at *3).

Here, Beneche has been detained for over a year, and there is nothing in the record to suggest that Beneche has engaged in any delay tactics. Thus, the court concludes that Beneche's detention of over thirteen months without a bond hearing weighs in favor of finding his detention unreasonably prolonged. See, e.g., id. (fourteen month detention); Arostegui-Maldonado, 794 F. Supp. 3d at 939 ("roughly

11

eight months . . . would still be sufficient to trigger scrutiny"); A.L., 761 F. Supp. 3d at 826 ("Petitioner has been held in custody without a bond hearing for nearly ten months."); Lett v. Decker, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018), vacated and remanded on other grounds, No. 18-3714, 2020 WL 13558956 (2d Cir. July 30, 2020) (ten months of detention).

### B. Likely Duration of Future Detention

Beneche's appeal of the IJ's September 2025 order is still pending before the BIA and, whatever the outcome of that appeal, Beneche's case is likely to be remanded to an IJ or appealed to the First Circuit. As explained above, both an asylum officer (in 2019) and an IJ (in 2025) concluded that Benche has demonstrated a legitimate fear of torture if returned to his home country. Thus, it is likely that Beneche's detention could extend for years as his case progresses through the courts. See, e.g., G.P., 103 F.4th at 899-900 (describing nearly four-year detention of noncitizen in withholding-only proceedings). This factor also weighs in Beneche's favor.

### C. Reasons for Delay

As noted, Beneche has not caused any delay in his own case. While Beneche has exercised his statutory right to seek withholding of removal, "[c]ourts generally do not consider bona fide immigration proceedings, initiated by the [noncitizen], as grounds to deny a bond hearing." Fils-Aime, 808 F. Supp. 3d at 226 (quoting Smorodska, Civ. No. 1:20-cv-446-JL, doc. no. 31 at *4). The government does not contest that Beneche diligently appeared for his scheduled hearing on January 22,

2025 and otherwise complied with the conditions of his supervision between February 12, 2023 (the day the Notice to Appear was issued) and March 10, 2025 (the day he was re-detained). On the other hand, there is nothing in the record before the court to suggest that the government caused any delay prolonging Beneche's detention. Thus, this factor is neutral.

D.      Conditions of Confinement

Finally, Beneche has been held at FCI Berlin, a medium security federal prison, alongside convicted criminals for over thirteen months. Cf. Hernandez-Lara, 10 F.4th at 28 (holding that noncitizen's "incarcerat[ion] alongside criminal inmates" increased severity of liberty deprivation). Because Beneche is being held in a penal facility, this factor weighs in favor of his petition. See Fils-Aime, 808 F. Supp. 3d at 226.

Having considered the four factors, the court concludes that Beneche's detention of over thirteen months without a bond hearing has become unreasonably prolonged in violation of his rights to due process under the Fifth Amendment. The remedy for his prolonged detention is a bond hearing before an immigration judge at which the government must prove (1) by clear and convincing evidence that Beneche poses a danger to the community, or (2) by a preponderance of the evidence that Beneche poses a flight risk. K-S, 2025 WL 3671774, at *5 (quoting Hernandez-Lara, 10 F.4th at 41).

## CONCLUSION

Beneche's petition for a writ of habeas corpus (doc. no. 1) is granted.

Respondents are ordered to provide Beneche with a constitutionally adequate bond

hearing before an IJ within 7 days. Within 24 hours of the bond hearing's

conclusion, the government shall file a status report notifying the court of the result

of the bond hearing.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 16, 2026

cc:    Counsel of Record

14